# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

JOHN T. CLOUD,

    *Petitioner*,

vs.

JAMES BENEDETTI, *et al.*,

    *Respondents.*

2:09-cv-00443-LDG-RJJ

ORDER

This represented habeas matter under 28 U.S.C. § 2254 comes before the Court for a decision on the merits on the sole ground presented. Petitioner alleges that he was convicted in violation of the Fifth Amendment's protection against compulsory self-incrimination when statements made to an investigating officer prior to the *Miranda* warnings being given were admitted at trial.

## *Background*

Petitioner John Cloud seeks to set aside his 2007 Nevada state conviction, pursuant to a jury verdict, of two counts of driving under the influence of alcohol and causing death and/or substantial bodily harm to another person. He was sentenced to two concurrent terms of 200 months with eligibility for consideration for parole after a minimum of 80 months.

On direct appeal, the Supreme Court of Nevada summarized the facts pertaining to the *Miranda* issue and rejected petitioner's claim on the following grounds:

> Cloud contends that the district court violated his federal and state constitutional rights by failing to suppress statements

that were made without *Miranda*[FN1] warnings. Specifically, Cloud claims that he was handcuffed, administered a field sobriety test, and asked questions without the benefit of a *Miranda* warning.

[FN1] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The Fifth Amendment privilege against self-incrimination provides that statements made by a suspect during a custodial interrogation are inadmissible unless the police first provide a *Miranda* warning.[FN2] An individual is deemed in custody where there has been a formal arrest or where there has been a restraint on freedom of movement of the degree associated with a formal arrest so that a reasonable person would not feel free to leave.[FN3]  We consider the totality of the circumstances in determining whether a defendant was in custody during police questioning.[FN4] "Important considerations include the following: (1) the site of the interrogation, (2) whether the investigation has focused on the subject, (3) whether the objective indicia of arrest are present, and (4) the length and form of questioning."[FN5]

[FN2] *State v. Taylor*, 114 Nev. 1071, 1081, 968 P.2d 315, 323 (1998); *see also Miranda*, 384 U.S. at 478-79.

[FN3] *Taylor*, 114 Nev. at 1082, 968 P.2d at 323.

[FN4] *Alward v. State*, 112 Nev. 141, 154, 912 P.2d 243, 252 (1996), *overruled on other grounds by Rosky v. State*, 121 Nev. 184, 111 P.3d 690 (2005).

[FN5] *Id.* at 154-55, 111 P.3d 690, 912 P.2d at 252.

Here, the district court heard testimony that Cloud left the accident scene and entered a convenience store.  Sergeant James Carroll escorted Cloud back to the accident scene in handcuffs, where they were met by Detective Corey Moon. Detective Moon was part of a team assigned to investigate fatal traffic accidents.  That evening, he was in uniform and was responsible for determining whether Cloud was impaired. In Cloud's presence, he asked Sergeant Carroll why Cloud was in handcuffs, told Sergeant Carroll to remove the handcuffs, and stated that Cloud was "not under arrest yet."  Detective Moon then asked Cloud to go to a location on the street intersection that was behind an emergency vehicle, on the other side of his vehicle, and away from the spectators and flashing lights.  Cloud went to that location voluntarily. When Detective Moon left Cloud to talk to someone else, a patrol officer was standing with Cloud. While Detective Moon administered a field sobriety test, he asked Cloud general questions. Among his questions were "why did you run the red light?" Cloud responded, "I guess I missed it." Five or ten minutes later, after completing the field sobriety test, Detective Moon determined that Cloud was intoxicated and formally placed him under arrest. Under these circumstances, we

> conclude that Cloud was not in custody for *Miranda* purposes and that the district court did not err by denying his pretrial suppression motion.[FN6]
>
>> [FN6] *Cf. Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)(holding that persons temporarily detained pursuant to routine traffic stops are not in custody for *Miranda* purposes); *Dixon v. State*, 103 Nev. 272, 274, 737 P.2d 1162, 1164 (1987)(a Miranda warning is not required "before reasonable questioning and administration of field sobriety tests at a normal roadside traffic stop").

#11, Ex. 34, at 1-3.

The parties do not challenge the accuracy of the state supreme court's recital, which is presumed to be correct unless shown to be incorrect by clear and convincing evidence. *See,e.g., Sims v. Brown*, 425 F.3d 560, 563 n.1 (9th Cir. 2005).[1]

### *Governing Standard of Review*

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 117 S.Ct. 2059, 2066 n.7(1997). Under this deferential standard of review, a federal court may not grant habeas relief merely on the basis that a state court decision was incorrect or erroneous. *E.g., Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003). Instead, under 28 U.S.C. § 2254(d), the federal court may grant habeas relief only if the decision: (1) was either contrary to or involved an unreasonable application of clearly established law as determined by the United States Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. *E.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 15, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003).

A state court decision is "contrary to" law clearly established by the Supreme Court only if it applies a rule that contradicts the governing law set forth in Supreme Court case law or

---

[1] This Court makes no credibility findings or other factual findings regarding the truth or falsity of evidence or statements of fact in the state court. The Court refers to same solely as background to the issues presented in this case, and it does not refer to all such material. No statement of fact made in describing statements, testimony or other evidence in the state court constitutes a finding by this Court.

if the decision confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result. *E.g., Mitchell,* 540 U.S. at 15-16, 124 S.Ct. at 10. A state court decision is not contrary to established federal law merely because it does not cite the Supreme Court's opinions. *Id.* Indeed, the Supreme Court has held that a state court need not even be aware of its precedents, so long as neither the reasoning nor the result of its decision contradicts them. *Id.* Moreover, "[a] federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." *Mitchell*, 540 U.S. at 16, 124 S.Ct. at 11. For, at bottom, a decision that does not conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly established federal law.

A state court decision constitutes an "unreasonable application" of clearly established federal law only if it is demonstrated that the court's application of Supreme Court precedent to the facts of the case was not only incorrect but "objectively unreasonable." *E.g., Mitchell*, 540 U.S. at 18, 124 S.Ct. at 12; *Davis v. Woodford*, 333 F.3d 982, 990 (9th Cir. 2003).

To the extent that the state court's factual findings are challenged intrinsically based upon evidence in the state court record, the "unreasonable determination of fact" clause of Section 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, the AEDPA requires substantially more deference:

> . . . . [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

If the state court factual findings withstand intrinsic review under this deferential standard, they then are clothed in a presumption of correctness under 28 U.S.C. § 2254(e)(1);

-4-

and they may be overturned based on new evidence offered for the first time in federal court, if other procedural prerequisites are met, only on clear and convincing proof. 393 F.3d at 972.

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Davis*, 333 F.3d at 991.

### *Discussion*

The Nevada Supreme Court's rejection of Cloud's Fifth Amendment claim was neither contrary to nor an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

*Miranda* bars the admission of statements made during a custodial interrogation without the *Miranda* warnings first having been given. *E.g., Yarborough v. Alvarado*, 541 U.S. 652, 660-61, 124 S.Ct. 2140, 2147-48, 158 L.Ed.2d 938 (2004). The custody determination is fact specific and the ultimate inquiry is whether there is a formal arrest or restraint on freedom of movement *of the degree associated with a formal arrest*. 541 U.S. at 662, 124 S.Ct. at 2148. The fact that the police may view the person being questioned as a suspect does not establish that the questioning is custodial. *See id.*

Petitioner relies upon the United States Supreme Court's *Berkemer* decision cited in the Nevada Supreme Court's written decision quoted above.

The Ninth Circuit's description of the *Berkemer* decision in *United States v. Galindo-Gallegos*, 244 F.3d 728 (9th Cir. 2001), in connection with a border stop, is pertinent to a number of the arguments presented by Cloud in the present case. The Ninth Circuit described *Berkemer* in the following manner:

> The critical Supreme Court decision is *Berkemer v. McCarty*.[FN7] The question there was whether roadside questioning of a motorist detained on a traffic stop amounted to custodial interrogation for purposes of *Miranda*. It was even more plain there than here that the motorist's next stop was jail, because he was weaving all over the road and too impaired to perform a field sobriety test without falling down.[FN8] The officer decided as soon as he saw the man step out of his car, before he even talked to him, that he would be taken into custody.[FN9] And it was at least as plain that the officer's questions were likely to elicit incriminating answers. The officer asked the man if he had been using intoxicants, and he answered that he had drunk "two beers" and "smoked several joints of marijuana."[FN10]

> [FN7]  468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).
>
> [FN8]  *See id.* at 423, 104 S.Ct. 3138.
>
> [FN9]  *See id.*
>
> [FN10] *See id.*
>
> Nevertheless, the Court held that roadside questioning of a motorist detained on a traffic stop was not custodial interrogation for purposes of *Miranda*.[FN11]  There were two reasons.  First, such traffic stops are "presumptively temporary and brief," because even if guilty of a traffic infraction, most people just get a traffic ticket and go on their way.[FN12]  Second, and most important to this case, "the typical traffic stop is public."  The importance of its being public is that "exposure to public view both reduces the ability of an unscrupulous policeman to use illegitimate means to elicit self-incriminating statements and diminishes the motorist's fear that, if he does not cooperate, he will be subjected to abuse."[FN13]  For these reasons the Court held that such questioning should be treated as within the category of a *Terry* stop, not as custodial interrogation for *Miranda* purposes.  The policeman's intent to arrest was immaterial, because subjective intention was immaterial. "The only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation."[FN14]  The hypothetical reasonable man is one who is not breaking the law in so serious a way that arrest is likely,[FN15] so even though a reasonable man as impaired as the driver in *Berkemer* would expect to get arrested and jailed if he was caught, he was treated as subject only to a *Terry* stop.
>
> [FN11] *See id.* at 438-40, 104 S.Ct. 3138.
>
> [FN12] *See id.* at 437, 104 S.Ct. 3138.
>
> [FN13] *Id.* at 438, 104 S.Ct. 3138.
>
> [FN14] *Id.* at 442, 104 S.Ct. 3138.
>
> [FN15] *See United States v. Wauneka*, 770 F.2d 1434, 1438 (9th Cir.1985)(Defining reasonable man in these circumstances as a "reasonable innocent person.").

244 F.3d at 730-31 (final footnote omitted).

While Cloud relies upon selected language from *Berkemer* taken out of context, the pertinent holding in the case in truth undercuts rather than supports his claim.

Petitioner points to statements in *Berkemer* discussing the possibility that police officers might use a brief detention on a minor traffic offense as a means of inducing a

defendant to incriminate himself on a more serious offense. *See* 468 U.S. at 431-33 & n.13, 104 S.Ct. at 3145-46 & n.13. Critically, however, the Supreme Court discussed this prospect in considering a preliminary issue of whether *Miranda* governed "the admissibility of statements made during custodial interrogation by a suspect accused of a misdemeanor traffic offense." 468 U.S. at 422-23, 104 S.Ct. at 3141. The *Berkemer* Court held that there was no such "misdemeanor exception" to *Miranda*. The Court held on that preliminary issue "that a person subjected to *custodial interrogation* is entitled to the benefit of the procedural safeguards enunciated in *Miranda*, regardless of the nature or severity of the offense of which he is suspected or for which he was arrested." 468 U.S. at 434, 104 S.Ct. at 3147 (emphasis added)(footnote omitted).

Cloud indisputably received the benefit of this holding in *Berkemer*. Nothing in the Nevada Supreme Court's written decision in this case remotely suggests that Cloud's claim was rejected based upon any misconception that Cloud was stopped in connection with an offense to which *Miranda* did not apply.

The Supreme Court of Nevada instead rejected Cloud's claim on the basis that the statements were not made during a *custodial interrogation*. Nothing in *Berkemer* at all suggests that the Court's discussion of possible police pretextual use of misdemeanor stops to induce incriminating statements for felony offenses constituted part of the test for determining whether a defendant was subjected to custodial interrogation.

Under the AEDPA, the state courts must follow the holdings of the United States Supreme Court, not *dicta* in its opinions. *See,e.g., Cheney v. Washington*, 614 F.3d 987, 993-94 (9th Cir. 2010). This rule applies with even greater force when the *dicta* is from a portion of a Supreme Court opinion directed to an issue other than the one actually before the state court. No argument was made in Cloud's case that *Miranda* should not apply because of the offense involved. Rather, the only issue was whether the statements were made during a custodial interrogation.

On *that* issue, *Berkemer* sharply undercuts rather than supports petitioner's arguments seeking to establish that the statements were made during a custodial interrogation.

Petitioner bases a number of subsidiary arguments upon the premise that he was not "free to go." Whether the defendant was "free to go" is not the constitutional standard. In *Berkemer*, the defendant argued that any traffic stop should be considered a custodial interrogation based upon language in *Miranda* referring to the defendant being "otherwise deprived of his freedom of action in any significant way." Justice Marshall's opinion for the Court in *Berkemer* emphatically rejected this argument:

> It must be acknowledged at the outset that a traffic stop significantly curtails the "freedom of action" of the driver and the passengers, if any, of the detained vehicle. Under the law of most States, it is a crime either to ignore a policeman's signal to stop one's car or, once having stopped, to drive away without permission. . . . Certainly few motorists would feel free either to disobey a directive to pull over or to leave the scene of a traffic stop without being told they might do so.[FN25]
>
> [FN25] Indeed, petitioner frankly admits that "[n]o reasonable person would feel that he was free to ignore the visible and audible signal of a traffic safety enforcement officer.... Moreover, it is nothing short of sophistic to state that a motorist ordered by a police officer to step out of his vehicle would reasonabl[y] or prudently believe that he was at liberty to ignore that command." . . . .
>
> However, we decline to accord talismanic power to the phrase in the *Miranda* opinion emphasized by respondent. Fidelity to the doctrine announced in *Miranda* requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated. Thus, we must decide whether a traffic stop exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights.
>
> . . . . .
>
> . . . It is settled that the safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a "degree associated with formal arrest." . . . . If a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him "in custody" for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*. . . . .

468 U.S. at 436-37 & 440, 104 S.Ct. at 3148-49 & 3150 (citation footnote omitted).

Petitioner's arguments based upon a "free-to-go" standard thus are directly refuted by rather than supported by *Berkemer*.

-8-

In this regard, petitioner includes an allegation in a paragraph discussing what Cloud reasonably perceived that states: "The detective stated that he was not free to leave."[2] However, it appears that petitioner is referring to a statement by the detective *at the preliminary hearing* – not to the defendant at the time – that in his opinion the defendant was not free to go.[3] In all events, even if such a statement were made at the time, the undisputed fact that petitioner was not free to go before the detective concluded his investigation with him at the scene does not signify that petitioner's statements were made during a custodial interrogation for purposes of *Miranda*.

Petitioner further bases a number of subsidiary arguments upon the proposition that the detective was aware that he was investigating a felony DUI involving a fatality and that Cloud's responses might be inculpatory. *Berkemer* clearly rejects such an attempt to base a conclusion that the defendant was subjected to a custodial interrogation under *Miranda* upon what the officer knew at the time:

> . . . . Although Trooper Williams apparently decided as soon as respondent stepped out of his car that respondent would be taken into custody and charged with a traffic offense, Williams never communicated his intention to respondent. A policeman's unarticulated plan has no bearing on the question whether a suspect was "in custody" at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation. . . . .

468 U.S. at 442, 104 S.Ct. at 3151.

/ / / /

---

[2] #5, at 5.

[3] Compare #5, at 4 with #11, Ex. 6, at 28.

The Court makes two points in this regard.

First, when counsel quotes testimony or makes a statement of fact in this Court as to the content of the state court record, he must cite to the proceeding and the page of the transcript supporting the statement.

Second, any attempt to portray a statement made by a detective in a hearing instead as a statement made to the defendant at the relevant time would be, at exceeding best, disingenuous. Counsel has a duty of candor to the tribunal, and counsel's credibility is difficult to recover once lost.

-9-

In light of the fact that *Berkemer* undercuts rather than supports petitioner's arguments, the Nevada Supreme Court's rejection of his claim clearly was neither contrary to nor an unreasonable application of clearly established federal law. Similar to the present case, the incriminating statements in *Berkemer* were made at the time of an at least attempted field sobriety test and before the *Berkemer* officer – who in contrast to this case believed from the very outset that the defendant had committed an offense from the very outset – placed the defendant under arrest.[4] Under long-established law, the mere fact that petitioner was placed in handcuffs at one point does not in itself signify that he was subjected to a custodial interrogation for purposes of *Miranda*. "Handcuffing a suspect does not necessarily dictate a finding of custody." *United States v. Booth*, 669 F.2d 1231, 1236 (9th Cir.1981).

At bottom, petitioner must show not merely that his case is distinguishable from *Berkemer* but instead that the Nevada Supreme Court's decision in his case was an objectively unreasonable application of *Berkemer*. He has failed to do so here.

The petition therefore does not provide a basis for federal habeas relief.

IT THEREFORE IS ORDERED that the petition for a writ of habeas corpus, as amended, shall be DENIED on the merits and that this action shall be DISMISSED with prejudice.

IT FURTHER IS ORDERED that a certificate of appealabiity is DENIED, as jurists of reason would not find debatable or wrong this Court's holding that the Nevada Supreme Court's rejection of the claim was neither contrary to nor an unreasonable application of clearly established federal law. It is extremely unlikely that petitioner would be able to establish that his statements were admitted in violation of *Miranda* even on a *de novo* review. He clearly has not established a right to relief under the AEDPA standard of review.

---

[4]*See* 468 U.S. at 423, 104 S.Ct. at 3141. In the present case, the detective testified that he had not determined that Cloud had committed an offense before beginning the field sobriety test. #11, Ex. 18, at 29-31. The matter of whether the defendant is suspected of a felony offense rather than a misdemeanor, again, has nothing to do with whether the defendant is subjected to a custodial interrogation. Petitioner's continued reliance on the premise that the officer was using an investigation of a minor traffic offense as a predicate for a felony investigation is a complete red herring. *Miranda* applies regardless of the severity of the offense, and the key, and only, question was whether the statements were made during a custodial interrogation.

1  The Clerk of Court shall enter final judgment accordingly, in favor of respondents and
2  against petitioner, dismissing this action with prejudice.
3  DATED: 27 Oct 2010

_____
LLOYD D. GEORGE
United States District Judge